## UNITED STATES *vs.* JACKALOW.

1. To give a Circuit Court of the United States jurisdiction of an offence not committed within its district, it must appear, not only that the accused party was first apprehended in that district, but also that the offence was committed out of the jurisdiction of any State, and not within any other district of the United States.

2. Whether a particular place is within the boundaries of a State is not a question of law for the court, but a matter of fact for the jury to determine.

3. A special verdict finding that the offence was committed by the prisoner at a place designated, but omitting to find that it was outside the limits of any State, must be set aside.

This was an indictment against John, *alias* Johnny, *alias* John Canoe, *alias* Jackalow, a native of the Loo Choo Islands, for piracy on the high seas, found and tried in the Circuit Court of the United States for the district of New Jersey, and came into the Supreme Court on a certificate of the judges that they were divided in opinion.

The jury, in a special verdict, found that the offence charged

in the indictment was committed by the prisoner at a certain place described and designated, but did not find whether that place was within the jurisdiction of any State, within any district of the United States, or upon the high seas. Did this verdict authorize the Circuit Court to pronounce judgment of death against the prisoner? That was the question on which the judges divided.

*Mr. Bates, Attorney General,* and *Mr. Keasley,* of New Jersey, for the United States.

No counsel appeared for Jackalow.

Mr. Justice NELSON. This case comes before us on a division of opinion of the judges of the Circuit Court of the United States for the district of New Jersey.

The first count in the indictment charges that the prisoner, with force and arms, on the high seas, in waters within the admiralty and maritime jurisdiction, on board of an American vessel called the "Spray," piratically, feloniously, and violently did assault one John F. Leete, the master of the vessel, putting him in bodily fear, and did feloniously, &c., seize, take, and carry away thirty pieces of gold coin, &c., of the goods and effects of the said master, contrary to the form of the statute, &c. The indictment also avers that the district of New Jersey is the district in which the prisoner was found and first apprehended for the offence.

The jury found a special verdict, that the offence charged in the first count was committed by the prisoner on board the "Spray," which at the time was lying in the waters adjoining the State of Connecticut, between Norwalk harbor and Westchester county, in the State of New York, at a point five miles eastward of Lyons's Point, (which is the boundary between the States of New York and Connecticut,) and one mile and a half from the Connecticut shore at low-water mark.

The indictment was found under the 3d section of the act of Congress of May 15, 1820, which enacts that if any person shall, upon the high seas, or in any open roadstead, or any

haven, basin, or bay, or in any river, &c., commit the crime of robbery in or upon any ship or vessel, or upon any of the ship's company, &c., or the lading thereof, &c., on being convicted before the Circuit Court of the United States for the district into which he shall be brought, or on which he shall be found, shall suffer death.

There is a proviso which declares that nothing in the section shall be construed to deprive any particular State of its jurisdiction over the offence, when committed within the body of a county, or authorize the courts of the United States to try such offenders after conviction or acquittance for the same offence in a State court.

The 2d section of the 3d article of the Constitution provides that "the trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the State where the crimes shall have been committed; but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed."

A material question in this case, in view of this provision of the Constitution, was, whether or not the offence was committed out of the jurisdiction of any particular State, because, if not, inasmuch as it was not committed within the State of New Jersey, the Circuit Court of the district of that State had no jurisdiction. That jurisdiction depends upon two facts: first, that the offence was committed out of the jurisdiction of any other of the States of the Union; and, second, that the prisoner was first apprehended in the district of New Jersey.

Crimes committed against the laws of the United States out of the limits of a State are not local, but may be tried at such place as Congress shall designate by law, but are local if committed within the State. They must then be tried in the district in which the offence was committed. (15 How., 488, 6th amendment of the Constitution of U. S.)

In many of the statutes prescribing offences against the laws of the United States, there is an express limitation excluding offences committed within the jurisdiction of a State. The acts of 1790 and 1825 are of this description.

Under these statutes the question presented in this case could

not arise, as the offence could not be committed within the limits of the State.

We agree, however, that the omission of the limitation in the act of 1820 constitutes no objection to the legality and force of the act, as it is competent for Congress to prescribe the punishment of offences committed on the high seas, open roadsteads, in any haven, basin, or bay, or in any river where the sea ebbs and flows, as there described, although within the limits of a State. But in these cases, as we have seen from the constitutional provision referred to, the indictment and trial must be in a district of the State in which the offence was committed.

Now, the special verdict finds that the offence in this case was committed upon the "Spray," lying in waters adjoining the State of Connecticut, between Norwalk harbor and Westchester county, in New York, at a place five miles eastward of Lyons's Point, and a mile and a half from the Connecticut shore. Whether this *place* thus described is out of the jurisdiction of a State or not, is not found, and is, of course, necessarily left to the court to determine. The learned judge of the District Court, sitting in the circuit with the presiding judge, in a very carefully considered examination of the question, came to the conclusion that the place where the offence was committed was within the jurisdiction of New York; and it appears that two of the eminent judges of the highest court of the State of New York entertained different opinions on this question. (3 Seldon, 295.)

We have not referred to this boundary of New York for the purpose of determining it, or even expressing an opinion upon it, but for the purpose of saying that the boundary of a State, when a material fact in the determination of the extent of the jurisdiction of a court, is not a simple question of law. The description of a boundary may be a matter of construction, which belongs to the court; but the application of the evidence in the ascertainment of it as thus described and interpreted, with a view to its location and settlement, belongs to the jury. All the testimony bearing upon this question, whether of maps,

surveys, practical location, and the like, should be submitted to them under proper instructions to find the fact.

We do not think the special verdict in this case furnishes ground for the court to determine whether or not the offence was committed out of the jurisdiction of a State, and shall direct that it be certified to the Circuit Court, to set aside the special verdict, and grant a new trial.