Ex parte BALLINGER et al.[1]

(District Court, D. Virginia. April 2, 1882.)

PIRACY—JURISDICTION OF FEDERAL COURTS.

Rev. St. § 5370, making robbery, etc., on a vessel within tide waters piracy, punishable in the federal courts, is limited by section 5328 to acts committed outside the territorial jurisdiction of the state courts; and hence a robbery committed on a ferryboat while passing on the Potomac river, between Washington, D. C., and Alexandria, Va., is not cognizable in the federal court in Virginia.

This was a proceeding by writ of habeas corpus. The applicants for the writ had been committed to jail in Alexandria, Va., by United

---

[1] This case has been heretofore reported in 5 Hughes, 387, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

States Commissioner Fowler, on a charge of piracy. The acts of alleged piracy were committed on board a ferryboat which was then on its way from Washington, D. C., to Alexandria, Va., and consisted in forcibly seizing and throwing overboard certain newspapers which were intended for circulation in Alexandria.

Westel Willoughby and L. L. Lewis, Dist. Atty., for the United States.

Charles E. Stuart, F. L. Smith, S. G. Brent, and Edmund Burke, for the accused.

HUGHES, District Judge. The prisoners are in jail on a charge of piracy, alleged to have been committed on one of the ferryboats plying between Washington and Alexandria, on the Potomac river, on tide water. The offense charged is the taking with violence certain property from a passenger on the steamer. The arrest is based upon section 5370 of the Revised Statutes of the United States, which makes robbery or murder in or upon a vessel on tide waters piracy, and fixes upon such a crime the penalty of death. The prisoners are committed to jail here to await indictment in the District of Columbia.

Piracy was originally an offense known only to the admiralty and international law. Murder, robbery, or depredation, committed in a general spirit of hostility to mankind, on the high seas, was called "piracy." It was cognizable only by the admiralty court. But as pirates often invested havens, bays, rivers, and inlets, and committed like offenses there, it became necessary for the nation whose jurisdiction was thus infested and violated to declare similar acts, though committed on waters other than the high seas, to be piracy, and to make it cognizable by the local criminal courts. In this way rose the statutory crime of piracy. The constitution of the United States gives to congress power to establish admiralty courts, and to prescribe their jurisdiction. Congress has exercised this power only to the extent of conferring upon the admiralty courts jurisdiction in civil causes arising upon contract and tort. But it has given the admiralty courts no criminal jurisdiction, for the reason that the constitution guaranties a jury trial in criminal prosecutions, and juries are unknown to the admiralty law. Congress has vested criminal jurisdiction in the circuit and district courts of the United States, sitting as courts of common law. It has conferred upon those courts the cognizance of crimes committed on American vessels on the high seas, and of crimes committed on vessels within the havens, bays, and rivers affected by the tides; statutory piracy being among the crimes of which cognizance is thus given to the federal courts. But by the crimes act of 1790 this jurisdiction over certain crimes committed within the tide-water inlets, bays, rivers, etc., was conferred by a section which limited it to such crimes as are committed "out of the jurisdiction of any particular state." The criminal jurisdiction of the states is exercised by local courts, whose powers do not extend beyond the body of the counties, respectively. But the body of the county has always been held to embrace all waters that lie within the fauces terræ; that is to say, within lines supposed to be drawn from one utmost point of land to an-

other utmost point. Over such waters, of course, the jurisdiction of the courts of the counties (that is to say, the jurisdiction of the states) extends. And therefore congress, in giving jurisdiction to the national courts over certain crimes committed in bays, rivers, inlets, etc., affected by tides, as has been stated, in order to avoid a conflict of jurisdiction, and also for the reason that it was unnecessary to provide for the trial of crimes already cognizable by competent courts, gave jurisdiction to the federal courts over such of these crimes only as should be committed in waters outside of the jurisdiction of the states, outside the fauces terræ, outside the bodies of counties. So, likewise, in the crimes act of 1820 the section which relates to piracy, and from which the present section 5370 is taken, contains the following clause, viz.: "Provided that nothing in this section contained shall be construed to deprive any particular state of its jurisdiction over such offenses when committed within the body of a county," etc. In construing this statute, the United States supreme court, in the Case of Jackalow, 1 Black, 484, held that the special verdict which was found was insufficient to warrant a judgment to be rendered upon it, because it failed to show whether or not the offense was committed outside of the jurisdiction of New York, beyond the forks of the land of the adjacent county. See, also, U. S. v. Beavans, 3 Wheat. 336. And Mr. Bishop, the best writer on Criminal Law, remarks that, "within the counties, the dominion of the state and the common-law jurisdiction of their courts are practically almost as exclusive as if congress had no constitutional authority in exceptional localities there." This proviso, requiring that the piracy shall be committed in water outside the state jurisdiction, to be cognizable by United States courts, was dropped in transferring the section from the act of 1820 into the present Revised Statutes, where it stands as section 5370; and that section, so unqualified in its tenor, is well calculated to mislead the examining and committing officers of the United States, as it did in this case. But section 5370 is nevertheless qualified by a provision of law equivalent to the proviso which the codifier dropped. Section 5370 stands in a title of the Revised Statutes dealing with crimes, and is to be construed in connection with section 5328, standing in the beginning of that title, which declares that "nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof." Now, I take it to be unquestionable that the crime of robbery, such as is set forth in the papers before me, is cognizable by the proper court of the District of Columbia for trying common-law offenses. And therefore that court, having jurisdiction to try this offense of robbery, would have such jurisdiction "taken away" and "impaired," if a court of the United States should try this national offense of piracy. The offense for which these prisoners are held was not committed out of the jurisdiction of the District of Columbia. Indeed, there are two local jurisdictions for certain purposes over the Potomac river, between Alexandria and Washington,—that of Virginia as well as that of the District; and to try the offense of piracy in a national court would be to take away and impair two local jurisdictions, and doubly violate the inhibition of section

5328. The proceeding under which the prisoners are held having been without jurisdiction, their imprisonment is without law, and they must be discharged. I will sign an order of discharge.