**GRAY v. UNITED STATES.**

**No. 13773.**

United States Court of Appeals
Eighth Circuit.

April 18, 1949.

**As** Corrected on Denial of Rehearing
June 6, 1949.

Rehearing Denied July 14, 1949.

920

C. A. Taney, Jr., of Minneapolis, Minn. (Leonard L. Kalish, of Philadelphia, Pa., on the brief), for appellant.

Clifford F. Hansen, Asst. U. S. Atty., of St. Paul, Minn. (Alexander M. Campbell, Asst. Atty. Gen., John W. Graff, U. S. Atty., of St. Paul, Minn., and Vincent A. Kleinfeld, Atty., Dept. of Justice, and Bernard D. Levinson, Atty., Federal Security Agency, both of Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant was convicted and sentenced to pay a fine of $1,000 and costs for introducing into interstate commerce a certain drug called Powdr-X contained in packages and misbranded, in violation of the Federal Food, Drug, and Cosmetic Act, § 301(a) et seq., 21 U.S.C.A. § 331(a) et seq. The information against him contained four counts but the jury found him not guilty on count 2, and count 4 was dismissed during the trial. The judgment from which he appeals was entered upon the jury verdicts on the remaining counts of the information numbered one and three. Each of these counts was predicated upon one of the two shipments of packages of the drug made by appellant at Minneapolis, Minnesota; one shipment on December 6, 1945 to Mrs. H. Feltenberger at Culver City, Calif. (first count), and the other on March 23, 1946, to Ira J. Evans at North El Monte, Calif. (third count). The charge was to the effect that in each of the shipments the drug was misbranded in violation of the Act; (1) that the label upon each of the immediate containers was as follows:

"Powdr
X
Net Weight 8 oz.
Contents
Silicon Dioxide, Aluminum Oxide,
Ferric Oxide, Calcium Oxide,
Magnesium Oxide, Sodium Oxide.

L. M. Gray, National Distributor
3856 Chicago Avenue
Minneapolis, Minn.
Phone Colfax 8295."

(2) that the appellant accompanied each shipment with a letter intended to be used

together with the drug and constituting a labeling thereof, which letter he mailed to the consignee on the same day he made the shipment. In one of the letters it was stated that the drug was "splendid for almost any infection, abrasion or ulcers" (first count), and in the other that "We have good reason for expecting Powdr X to correct ulcers of the stomach * * *" "Gas pains that usually accompany ulcers of the stomach should subside in a week or ten days", which statements were false and misleading and in truth said drug would not be efficacious as stated; (3) that the drug was not designated by a name recognized in an official compendium and its label failed to bear the common or usual name of the drug, to wit, pumice; (4)[1] the labeling failed to bear adequate directions for use, to wit, there were no directions for use.

Before entering his plea appellant moved to dismiss the information on the ground that each of the counts was duplicitous in that each attempted to charge more than one offense denounced by the Act, because each count[2] charged against him conduct alleged to be in violation of 21 U.S.C.A. § 352(a)[3] and conduct alleged to be in violation of 21 U.S.C.A. § 352(e)[4] and conduct alleged to be in violation of 21 U.S.C.A. § 352(f).[5]

It was argued for the motion and is reiterated here that these three kinds of conduct connected with the shipment of drugs in interstate commerce, to wit, (1) accompanying the shipment with a letter containing false statements; (2) failing to put the true name of the drug on its "label", and (3) failing to include directions for use in its "labeling", should be deemed separate offenses and pleaded in separate counts under 18 U.S.C.A. § 557 and Rule 8(a) of Federal Rules of Criminal Procedure, 18 U.S.C.A. It is stressed that the Act makes clear and positive distinction between conduct in respect to what the Act defines as

the "label" on the package of the drug and in respect to what it defines as the "labeling" of the drug. 21 U.S.C.A. § 321(k) provides that "The term 'label' means a display of written, printed, or graphic matter upon the immediate container of any article; * * *", and 21 U.S.C.A. § 321 (m) says that "The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." The Act makes "labeling" the broadly inclusive term and "label" is narrowly confined to what is put on the immediate container. It is contended that writing and mailing a letter containing false statements about the drug is conduct so different in kind from failing to put required matter in its label or failing to put required instructions for use in either the letter or the label that the inclusion of charges of the three sorts of misconduct in each count made each count duplicitous.

The trial court after consideration of the motion and argument, concluded that the charge in each count was single and not duplicitous in that the offense charged in each count was the introducing and delivering for shipment in interstate commerce of a misbranded article, in violation of 21 U.S.C.A. § 331(a), which prohibits the introduction or delivery for introduction into interstate commerce of "any * * * drug * * * that is * * * misbranded", under penalties provided in § 333(a). It deemed the several acts and omissions charged against appellant to be specifications of the ways in which that offense was committed by him. We find no error in that ruling.

But the court recognized that the offense in each count might be established under the information by proof of either one or all of the ways in which misbranding was charged to have been accomplished and it

---

[1] Count three did not include this specification (4) contained in count one.

[2] Except as above noted.

[3] Section 352. "Misbranded drugs and devices. A drug or device shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular."

[4] "(e) If it is a drug and is not designated solely by a name recognized in an official compendium unless its label bears (1) the common or usual name of the drug, if such there be; * * *."

[5] "(f) Unless its labeling bears (1) adequate directions for use".

suggested to the prosecutor to amend the information by adding to it at the foot of each count the following: "It being the intent and purpose of the plaintiff to charge hereunder only one interstate shipment and offense under the Food, Drug, and Cosmetic Act."

The amendment having been made the motion was treated as being directed against the amended information and was denied, a plea of not guilty as to each count was entered and the trial proceeded before the court and jury over a period of 16 days. It was not disputed that the appellant had made the two shipments of the drug, each including a number of packages of the Powdr-X produced by grinding up a certain mineral substance found in volcanic formation on a ranch property in Colorado, nor that the packages shipped bore the label described in the information, nor that appellant caused the two shipments to be accompanied by the described letters mailed by him to the respective consignees, but the testimony of lay and expert witnesses on the questions as to what Powdr-X really was and whether or not it was pumice as charged and whether or not it had therapeutic capacities as represented in the letters was very voluminous and contradictory in respect to the inferences to be drawn from it.

At the conclusion of its instructions to the jury the court delivered to the jury forms of verdict with blank spaces which the jury was directed to fill in with the words "guilty" or "not guilty", according to the findings arrived at. The forms had been prepared by the prosecution and appear not to have been exhibited to appellant's counsel, or discussed before their delivery to the jury. There was one form for each of the three counts submitted to the jury but each form required the jury to make and declare more than one determination of "guilty" or "not guilty" upon each of the three counts submitted to it. Responding to count one, the form filled in by the jury with the words "guilty" and "not guilty" and returned into court as the jury's verdict on that count reads as follows:

"Verdict as to First Count of Information (Feltenberger)

"We, the jury in the above entitled action, find the defendant, as charged in the first count of the Information * * * guilty of misbranding by introducing into interstate commerce a drug, to-wit, Powdr-X, with a label which was false and misleading; not guilty of misbranding by introducing a drug, to-wit, Powdr-X, in interstate commerce which was not designated solely by a name registered in an official compendium and that its label failed to bear the common name of the drug, to-wit, pumice; not guilty of misbranding by introducing into interstate commerce a drug, to-wit, Powdr-X, which failed to bear adequate directions for use. (Feltenberger)

"Dated this 27th day of March, 1948
        "Richard A. Fancher
                "Foreman." [6]

As shown on the face of this verdict the jury undertook to make special declarations by use of the words "guilty" or "not guilty" in respect to particulars of misbranding described by paraphrases of parts of the information in the verdict-forms but the only matter in respect to which the jury found the appellant guilty was "of misbranding by introducing into interstate commerce a drug, to-wit, Powdr-X, with a label which was false and misleading." Responding specially to other particulars of the charges paraphrased in the verdict-forms, the jury wrote in the words "not guilty."

The record shows that after the instructed jury had been deliberating for some hours without coming to agreement the prosecuting attorney in the presence of appellant's counsel indicated to the trial judge in chambers that mistakes had been made in the wording of the forms of the verdicts delivered to the jury which they were directed to fill out. The prosecutor used the verdict form applicable to the first count for illustration and pointed out to the court that the wording of the form related the declaration of "guilty" or "not guilty" which the jury might write in the first blank space in the form, to "a label" that was false instead of to "labeling that was

---

[6] The form of verdict on count 3 was the same omitting the last not guilty finding.

false" but there was no formal request or motion to recall the jury and make the correction. There was extended discussion in chambers between counsel on both sides and the judge, but it resulted in no action taken concerning the verdict-forms. The court indicated it was satisfied with the verdict-forms. Later the jury returned into court requesting further instructions but the matter of the verdict-forms was not then referred to. On the coming in of the verdicts the court entered judgment: "It is adjudged that defendant has been convicted upon verdicts of guilty of the offense of misbranding by introducing into interstate commerce a drug, to-wit: Powdr-X, with a label which was false and misleading as charged in counts 1 and 3 of the information * * *", and sentence was imposed as stated.

At the conclusion of all the evidence the appellant had moved for verdict of acquittal and promptly after the verdict had been returned against him he again moved for judgment of acquittal. The motions were denied and he contends here that the rulings were erroneous.

▇▇ (1) In the first place he contends that in this criminal prosecution there was no power or discretion in the court to require the jury to return verdicts which were in the nature of the special interrogatories and answers thereto which are permissible in civil actions but which have no place in criminal procedure. His position is that a count in a criminal information must state only one offense; that the only permissible plea to it is guilty or not guilty or nolo contendere, and that upon the plea of not guilty the only issue for the jury joined by the charge of the count and the plea is the general issue of "guilty" or "not guilty", and that the jury must be required to respond to that issue by a general verdict. His counsel took timely exception to the action of the court in submitting verdict-forms to the jury requiring multiple responses to each count on the ground that the form "required or permitted the jury to make a finding of guilty or not guilty three times in respect to count one, twice in respect to count two and twice in respect to count three", and "there is no authority

by statute, by Federal Rules of Criminal Procedure, or by precedent of decision to permit such verdicts to be submitted to the jury for the purpose of returning verdicts in any criminal case; and upon the further ground that it in effect gives the jury an opportunity to arrive at some sort of a compromise which they might not arrive at if they were given verdicts which required them to find only once as to each of the three counts whether the defendant is guilty or not guilty."

In the argument here appellant's counsel again asserts that after diligent search he has found "no statute, Rule of Criminal Procedure or precedent of decision" sanctioning the delivery of such a form of verdict to the jury for the purpose of returning their verdict in a criminal case or the requirement that the jury respond three times "guilty" or "not guilty" to one count of a criminal information. The prosecutor cites none and we find none. We think, as stated by the court in Anderson v. United States, 9 Cir., 273 F. 677, 679, that "it is not the practice of the federal courts in criminal cases to call for special verdicts". C.f. United States v. Noble, 3 Cir., 155 F.2d 315. And we are constrained to conclude that the delivery of these forms to the jury and the direction to fill them out with several declarations of guilty or not guilty as to each count present an innovation in American criminal practice. It would serve no purpose to review the discussions of the courts and law writers concerning the use of special interrogatory and answer verdicts in civil actions. There are many well known arguments for and against the practice but no one doubts that the question whether it should or should not be followed is a question of due process and is important and far reaching. The vesting of discretion in the trial court to apply the practice in civil actions ultimately achieved by Rule 49 of the new Rules of Civil Procedure, 28 U.S.C.A., however is no indication of authority to use it in criminal trials. In such trials the practice has been settled time out of mind to charge but one crime in one count, to accept but one general plea to it and to call upon the jury to make but one general response, guilty or not guilty. Such established pro-

924

cedure was obviously departed from here over appellant's objection and it may not be held that such a departure did not affect appellant's substantial right to be tried according to law. It is not the function of the courts subordinate to the Supreme Court to introduce innovations of criminal procedure. The action of the court requiring the special verdicts duly excepted to by appellant constituted error.

(2) Appellant also contends here, as he did upon his motion for acquittal made after verdict in the trial court, that the verdicts which purport to find him "guilty of misbranding by introducing into interstate commerce a drug, to-wit, Powdr-X with a label which was false and misleading" were fatally defective and insufficient to support a judgment of conviction or sentence against him because the information did not charge him with that offense and there was no substantial evidence that he committed it.

■ The record, considered with the provisions of the Act, has convinced that this contention for appellant is sound and that the verdicts are fatally defective. It is clear that the Act makes it a punishable offense to introduce a drug into interstate commerce "with a label which is false and misleading". 21 U.S.C.A. § 331(a) prohibits such introduction of a drug that is misbranded; 21 U.S.C.A. § 352(a) says that a drug is misbranded if its "labeling" is false or misleading in any particular, and 21 U.S.C.A. § 321(m) says that "the term 'labeling' means all labels" as well as other things. But in this information the only specification against the label with which the Powdr-X drug was shipped was that the label failed to bear the common or usual name of the drug. Although the label was set out in full in the information, it was not stated that the label was false or misleading and there was no proof that it was. It is beyond argument that a man cannot, under the Fifth and Sixth Amendments, be convicted and sentenced for an offense not charged and not proven against him, and that is the situation in which this appellant stands upon the record before us. As succinctly stated by the Supreme Court a hundred and fifty years ago, "A verdict is bad

if it varies from the issue in a substantial matter," Patterson v. United States, 2 Wheat. 221, 4 L.Ed. 224.

■ It is argued for the government in support of the judgment that we may regard the opening words of the verdicts, "We, the jury find the defendant as charged in the first count of the information guilty of misbranding", to be a general verdict of guilty on the first count and may treat the remaining parts of the verdicts as surplusage. That is to say we should treat as surplusage not only the jury's specific finding that defendant was guilty of the certain clearly stated offense denounced by the Act in respect to "a label which was false", but also the two instances in the same verdict in which the jury says it finds the defendant "not guilty of misbranding". But we must decline to indulge in such unreasonable straining at the record. It is evident from the record that the jury was not required to and did not intend to render a general verdict on any count of the information here. It was erroneously required to render verdicts in the nature of special verdicts in answer to particulars of the information, and regardless of abstractions about the merits and demerits of that practice in general it is obvious that in this case it was the attempt to apply a sort of special verdict practice that resulted in the void verdicts. None of the numerous criminal cases in which surplusage added to general verdicts of guilty has been deemed harmless can be held to be applicable to the situation here presented. Cf. Statler v. United States, 157 U.S. 277, 15 S.Ct. 616, 39 L.Ed. 700; Patterson v. United States, 2 Wheat. 221, 4 L.Ed. 224; Samlin v. United States, 9 Cir., 278 F. 170.

Here the jury did not mistakenly add inconsequential matter to a general verdict or anything that can fairly be called surplusage. It complied with the direction given by the court to make special response to special matter stated in paraphrases submitted to them. In consequence its verdict "varied from the issue" and was "bad".

■ It is further contended for the government that the only fair inference to be drawn from a reading of the whole record of the evidence, the proceedings and the

instructions, together with the verdict, is that the jury must have meant that the statements in appellant's letters about the therapeutic efficacy of his drug, which were its labeling as defined by the Act, were false. We recognize that a verdict even in a criminal case need not be avoided because of slight or inconsequential ambiguity contained in it where that is dispelled entirely and the import is rendered clear and certain by the context of the record of which it forms a part. But the voluminous record here does not present any basis other than mere speculation to conclude that the jury meant to say that the appellant was guilty of anything other than the offense of which they found him guilty. Although the record shows that a great amount of testimony was directed to the issue of false labeling in the letters and we find sufficient evidence to justify a finding if one had been made that there was such false labeling, the fact remains that there was a dispute on that issue of the kind that can only be settled by a jury under our system. That there were differences among the jurors is manifest from the fact that they came into court asking to have their "memories refreshed" as to testimony and as to the instructions and were out altogether twenty seven and a half hours. But if their concurrence finally arrived at was in respect to the labeling found in the letters there was no place in the special forms they were required to fill out to so indicate. They did not so indicate. The conclusion is inescapable that the error in the proceeding was not a mistake in wording or phrasing made by laymen on the jury whose true intent may be verified by reference to other parts of the record. The fatal error was committed in requiring the jury to fill out a special form whose paraphrases included no reference to letters mailed by appellant and which did not permit the jury to make any response to the issue whether false labeling by means of the letters had or had not been committed by the appellant. It can only be concluded that the judgment of conviction is not supported by the verdicts.

It is also argued that the appellant should be deemed to have waived the defects in the forms of verdict because he did not point them out to the court at the time the court delivered them to the jury. But the record shows that the court's attention was called to the defects both before the forms went to the jury and afterwards before the verdicts were arrived at. The court stated, "The jury can't possibly be misled by the form of verdict in so far as the term 'label' is concerned." "I can't conceive that there is anything but a rather captious objection to the word 'label' as I used it in the verdict." As this court's study of the record has led to contrary conclusions and to holding that in consequence of the defects in the forms it has resulted that there was no verdict of guilty of false labeling within the charge of the information, the onus of the outcome may not be shifted to the appellant. He was put in jeopardy on the charges of the several counts of the information and the jury was discharged without having rendered verdicts of guilty responding to the charges and he is therefore entitled to have the judgment against him avoided.

Reversed and remanded with directions to set aside the judgment and grant a new trial.