"Q. Yes? A. I figure it from the waves—I think we had seas about twelve feet.

"Q. Were there occasions when you worked on the dock before. Have you had much experience there? A. I work there now, I should think nearly fifteen years, because I am thirty-nine. I used to be around there from the time I was about twenty.

"Q. You recall this as an unusual sea? A. Yes, sir. That is the first of my working that I have seen one like that. It had one once, I don't know if you could call it an experience in Court, but I know one night I went to sleep and leave it very calm. The morning I get up I found at the Custom House the big boat all mash up and the sea was calm. That happened while I was asleep."

This Court agrees fully with the argument of proctor for the libellant herein that the respondent cannot claim an act of God if its negligence in the circumstances also contributed to the loss, but in the state of the testimony herein this Court is of the opinion that from the evidence it cannot be said that the testimony proves negligence by a fair preponderance, without the unwarranted assumption that despite Henry Walcott's testimony the sea was not too rough to lash down the cargo on barge "B-2." There is no evidence to show that the sea was not too rough, or the operation not too hazardous.

Finding, must, therefore, be for the respondent, and order may be thus drawn.

**UNITED STATES of America,**

**v.**

**Edward OGULL, Philip Buzzeo, Joseph Gernie and Michael Edward Mayer, Defendants.**

United States District Court
S. D. New York.
Feb. 28, 1957.

Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, New York City, for United States, Jerome J. Londin, Asst. U. S. Atty., New York City, of counsel.

Harold E. Frankel, New York City, for defendant Ogull.

Abraham Solomon, New York City, for defendant Buzzeo.

Moses L. Kove, New York City, for defendant Gernie.

Samuel W. Altman, New York City, for defendant Mayer.

PALMIERI, District Judge.

Defendants are being tried for unlawfully trafficking in narcotics [21 U.S.C. § 173 (1952); 21 U.S.C.A. § 174 (Supp. 1956)] and for conspiring so to do between April and September of 1956.[1] [Int.Rev.Code §§ 4704(a), 4701, 4703, 4724(c), 4771(a) (1954), 26 U.S.C. §§ 4704(a), 4701, 4703, 4724(c), 4771(a); 21 U.S.C. § 173 (1952); 21 U.S.C.A. § 174 (Supp.1956)]. On July 19, 1956,

---

1. Defendants Buzzeo and Mayer pleaded guilty at the outset of trial, leaving defendants Ogull and Gernie, whose cases were submitted to the jury.

section 174 was amended so as to increase the penalties applicable to a conviction on the conspiracy count.[2] See 70 Stat. 570 (1956); United States v. Carminati, D.C.S.D.N.Y., Crim. 151–226, 1957 (unpublished opinion). The questions before me are two: Are conspirators who became such before, but whose membership continued until after, the effective date of this amendment subject to its terms? If they are, is the judge or the jury to determine the duration of membership?

█ █ It is well established that a statute which increases a penalty with respect to a conspiracy which commenced prior to but was carried on and continued beyond the effective date of the new act does not violate the constitutional prohibition against *ex post facto* laws.[3] This is because the concept of conspiracy is that of a continuing crime; hence the new statute applies with respect to criminal acts accomplished after its effective date. Furthermore, once membership in a conspiracy is proved, there is a presumption that membership continues unless there is affirmative evidence of withdrawal. Where such evidence is absent, there would seem to be no requirement that the jury make a special finding as to whether or not defendants had withdrawn from the conspiracy before the effective date of the new statute.[4]

Defendants seemed to have been aware of their possible liability to the increased penalties. One of them, Ogull, introduced evidence which, if believed, would have established that he abandoned his criminal membership before the effective date of the statute. In rebuttal, the Government introduced evidence tending to show that his participation in the conspiracy extended beyond that date. A sharp issue of fact was drawn from evidence, all of it relating to a meeting at an airline terminal among Ogull, a co-conspirator who pleaded guilty, and a Government agent who purported to be a dealer in narcotics. The date of this meeting which Ogull fixed in early July, 1956 (before the effective date of the severer penalties), and which the Government witness fixed in early August, 1956 (after the effective date of these penalties), thus brought into sharp focus the necessity for resolving this narrow issue of fact as the basis for applying the appropriate penalties.

█ A determination of this issue cannot be gleaned from a general jury verdict, however, since Ogull's prior membership in the conspiracy is sufficient to support such a verdict. I therefore feel impelled to seek reliable factual guidance for the eventual imposition of sentence. Either the jury by special findings, or I, will have to de-

2. The 1951 Act, 65 Stat. 767, provided for a maximum fine of $2,000 and minimum and maximum prison terms of from 2 to 5 years for the first offense, 5 to 10 years for the second offense, and 10 to 20 years for the third and subsequent offenses. The 1956 Amendment provides for a maximum fine of $20,000 and minimum and maximum prison terms of from 5 to 20 years for the first offense and 10 to 40 years for the second and subsequent offenses.

3. United States v. Markman, 2 Cir., 193 F.2d 574, certiorari denied sub nom. Livolsi v. United States, 1952, 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1352; United States v. Goldberger, 3 Cir., 197 F.2d 330, certiorari denied 1952, 344 U.S. 833, 73 S.Ct. 40, 97 L.Ed. 648; Huff v. United States, 5 Cir., 1951, 192 F.2d 911, certiorari denied 1952, 342 U.S. 946, 72 S.

Ct. 560, 96 L.Ed. 703; United States v. Carminati, D.C.S.D.N.Y., Crim. 151–226, 1957 (unpublished opinion).

4. See note 3, supra; cf. United States v. Compagna, 2 Cir., 1944, 146 F.2d 524, 527, certiorari denied 1945, 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422; United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, 90, certiorari denied, 1945, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637, where the court approved instructions to the jury which required a confederate to *satisfy the jury* by affirmative proof of his having terminated his unlawful membership. The Second Circuit in United States v. Markman, supra, relied on these two cases but seemed to require a shifting of merely the burden of coming forward, not the burden of persuasion.

termine whether or not Ogull continued his membership beyond the effective date of the 1956 amendment. But for me to determine this issue would probably amount to a denial of defendant's constitutional rights to be tried by jury and to due process of law.[5] Indeed, it may even be urged that it would be unconstitutional to do so with respect to the defendant who introduced no evidence as to his having disassociated himself from the conspiracy.[6]

The alternative procedure would be to seek clarification from the jury by asking it to answer special questions after it has decided on a general verdict. While this procedure would appear to be quite novel, at least in modern times, it nevertheless seems to be a fair means of solving the quandary. However, as will appear, the traditional jury power is not inconsistent with such an obligation and, under the circumstances, represents the only part of the court which can constitutionally deal with this issue. I am, therefore, submitting special questions for the jury to consider after it reaches its general verdicts and only if those verdicts are verdicts of guilt.[7]

5. U.S.Const. Amend. VI; Amend. V; cf. Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Horning v. District of Columbia, 1920, 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185; Berra v. United States, 1956, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013; Stevenson v. United States, 1896, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980.

6. But cf. Sparf v. United States, 1895, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (trial judge not required to charge with respect to a lesser included offense if the evidence would not justify a verdict of guilty as to that offense); Dillon v. United States, 8 Cir., 218 F.2d 97, certiorari granted 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248, certiorari dismissed and case remanded, 1955, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (same). Compare Tot v. United States, supra, note 5, with Morrison v. People of State of California, 1934, 291 U.S. 82, 88, 54 S.Ct. 281, 284, 78 L.Ed. 664 ("[W]ithin limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of the convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression."); see Note, Constitutionality of Rebuttable Statutory Presumptions, 55 Col.L.Rev. 527 (1955).

7. The form of verdict sheet which I am submitting to the jury reads as follows:

Form of Verdicts

As to the defendant Edward Ogull:

| | | |
|---|---|---|
| Count 1 | Not Guilty —— | Guilty —— |
| Count 2 | Not Guilty —— | Guilty —— |
| Count 3 | Not Guilty —— | Guilty —— |
| Count 7 | Not Guilty —— | Guilty —— |

. . . . . . . . . . .

As to the defendant Joseph Gernie:

| | | |
|---|---|---|
| Count 2 | Not Guilty —— | Guilty —— |
| Count 3 | Not Guilty —— | Guilty —— |
| Count 5 | Not Guilty —— | Guilty —— |
| Count 6 | Not Guilty —— | Guilty —— |
| Count 7 | Not Guilty —— | Guilty —— |

. . . . . . . . . . .

1. If, and only if you find defendant Ogull guilty of being a member of the conspiracy charged in Count 7, please state whether or not his participation in that conspiracy continued in August 1956.

The participation of Ogull in the conspiracy set forth in Count 7 $\frac{did}{did\ not}$ continue in August 1956.

2. If, and only if you find defendant Gernie guilty of being a member of the conspiracy charged in Count 7, p'ease state whether or not his participation in that conspiracy continued in August and September 1956.

The participation of Gernie in the conspiracy set forth in Count 7 $\frac{did}{did\ not}$ continue in August and September 1956.

In the event you should find either Ogull or Gernie guilty under Count 7 (the Conspiracy Count) then, and only in that event, please answer the following questions by a YES or NO:

3. Did Overt Act 15, to wit:

"15. * * * on or about the 2nd day of August, 1956,—in the Southern District of New York, Michael Edward Mayer, a defendant, was at the premises described as the West 67th

Since it would be fairer, apart from Constitutional considerations, to treat both defendants identically, I am adopting the same procedure for both. Although no objections are contemplated by counsel, I feel that the apparent novelty of this procedure warrants this opinion.

Any objection to this procedure must necessarily be based on an argument that it impairs the defendant's constitutional rights to be tried by a jury and to due process of law. To ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court.[8] Moreover, any abridgment or modification of this institution would partly restrict its historic function, that of tempering rules of law by common sense brought to bear upon the facts of a specific case.[9]

Some support for this view does exist in the federal jurisprudence. Although there has never been a case dealing with special questions employed like those of this case, several courts have urged that the only function of a federal jury in a criminal case is to bring in a verdict of guilty or not guilty.[10] These courts were faced with situations of probable jury confusion from clumsily defined issues, and held it error to require a jury to bring in a special verdict.[11] Their language, in stating that

---

Street Garage, in the City of New York."

occur in furtherance of the conspiracy set fourth in Count 7 and to effect the objects thereof?

Yes ——— No ———

4. Did Overt Act 16, to wit:

"16. * * * on or about the 6th day of August, 1956,—in the Southern District of New York, Joseph Gernie and Michael Edward Mayer, defendants, were together at the premises described as the West 67th Street Garage, in the City of New York."

occur in furtherance of the conspiracy set forth in Count 7 and to effect the objects thereof?

Yes ——— No ———

5. Did Overt Act 17, to wit:

"17. * * * on or about the 18th day of September, 1956,—in the Southern District of New York, Michael Edward Mayer, a defendant, was at the premises described as 307 West 69th Street, in the City of New York."

occur in furtherance of the conspiracy set forth in Count 7 and to effect the objects thereof?

Yes ——— No ———
    *       *       *       *       *

After the Jury had arrived at its verdicts and after it had answered all but the third question, it reported a difficulty in understanding that question. I therefore withdrew Question No. 3 from the Jury's consideration, counsel not objecting, and the Jury then reported its verdicts and answers.

It should be noted that the Jury found Defendants Ogull and Gernie guilty on all counts and found that the membership of both of them continued through August 1956 and that Overt Acts 16 and 17 did occur.

8. Morris v. United States, 9 Cir., 1946, 156 F.2d 525; cf. United States v. Noble, 3 Cir., 1946, 155 F.2d 315. But cf. Sparf v. United States, supra, note 6, 156 U.S. at pages 64–107, 15 S.Ct. at pages 278–295 *passim* (jury has a moral but not a legal duty to adhere to the law charged it by the court); Farley, Instructions to Juries—Their Role in the Judicial Process, 42 Yale L.J. 194 (1932).

9. See 1 Holdsworth, History of Eng.Law 374–350 (3d ed. 1922); Williams, The Proof of Guilt 198–199, 225 (1955).

10. See Gray v. United States, 8 Cir., 174 F.2d 919, 923–924, certiorari denied, 1949, 338 U.S. 848, 70 S.Ct. 90, 94 L.Ed. 519. "In [criminal] trials the practice has been settled time out of mind to charge but one crime in one count, to accept but one general plea to it and to call upon the jury to make but one general response, guilty or not guilty. * * * It is not the function of the courts subordinate to the Supreme Court to introduce innovations of criminal procedure."

11. Morris v. United States, supra, note 8; Gray v. United States, supra, note 10 (alternative holding); cf. Anderson v.

anything but a general verdict was an unheard of deviation,[12] went beyond the necessities of the particular situations confronting them.

In fact, the opposite is true. Special verdicts are as old a feature of the jury system as are general verdicts. Blackstone writes:[13]

> "And such public or open verdict may be either general, guilty, or not guilty; or special, setting forth all the circumstances of the case, and praying the judgment of the court, whether, for instance, on the facts stated, if it be murder, manslaughter, or no crime at all. This is where they doubt the matter of law, and therefore chuse to leave it to the determination of the court; though they have an unquestionable right of determining upon all the circumstances, and finding a general verdict, if they think proper so to hazard a breach of their oaths: and if their verdict be notoriously wrong, they may be punished, and the verdict set aside by attaint at the suit of the king; but not at the suit of the prisoner."

Reports of decisions indicate that English juries exercised this prerogative very frequently.[14] In Mackalley's case,[15] for instance, the jury brought in the following verdict:

> "but whether upon the whole matter aforesaid by the jurors aforesaid, in form aforesaid found, the killing aforesaid of the said Richard Fells in form aforesaid done, be murder or not, the jurors aforesaid are ignorant; and therefore pray the advice of the justices and Court here; and if upon the whole matter aforesaid it shall seem to the justices and Court here, that the aforesaid killing of the aforesaid Richard Fells be murder, then the jurors aforesaid say upon their oath aforesaid, that the aforesaid * * * [defendants] * * * are guilty, and every one of them is guilty of the murder of the said Richard Fells, in manner and form as by the indictment aforesaid against them it is supposed; * * * And if upon the whole matter aforesaid * * *, it shall seem to the justices and the Court here, that the aforesaid killing * * *, be not murder; then the jurors aforesaid say upon their oath aforesaid, that the * * * [defendants] are not guilty, * * * of the murder * * *: and if upon the whole matter aforesaid * * *, it shall seem to the justices and Court here, that the killing of the aforesaid Richard Fells * * *, be felony or manslaughter; then the jurors aforesaid say upon their oath aforesaid, that the * * * [defendants] * * * are guilty, * * * of the felony and manslaughter aforesaid * * *"

It is clear that the English practice was received in this country.[16] Although

United States, 9 Cir., 1921, 273 F. 677 (judge not required to direct a jury to bring in a special verdict); United States Mut. Acc. Ass'n v. Barry, 1889, 131 U.S. 100, 120, 9 S.Ct. 755, 33 L.Ed. 60 (same); Queen v. Davies, [1897] 2 Q.B. 197, 13 T.L.R. 405 (dictum); Rex v. Bourne, 36 C.A.R. 125 (1952) (dictum).

12. See Gray v. United States, supra, note 10, 174 F.2d at page 923; Anderson v. United States, supra, note 11; United States v. Walsh, C.C.D.Mass.1884, 22 F. 644, 649. But cf. Sparf v. United States, supra, note 6, 156 U.S. at pages 68–69, 73–107, 15 S.Ct. at pages 280, 282–295 passim, and 156 U.S. 110–183, 15 S.Ct. 296–324 (dissenting opinion) (jury may by itself bring in a special verdict, citing many American and English cases and commentators) and notes 16–23, infra.

13. 4 Blackstone, Commentaries on the Laws of England 360–361 (15th ed. 1809).

14. See e. g., Rex v. Huggins, 2 Ld.Raym. 1574, 92 Eng.Rep. 518 (K.B. 4 Geo. II); Kelyng, J. 70, 84 Eng.Rep. 1087 (K B. 20 Chas. II); Williams, op. cit. supra note 9 at 201–203.

15. 9 Coke's Rep. 61b, 65b, 77 Eng.Rep. 824, 828 (K.B. 8 Jas. I).

16. See Sparf v. United States, supra, note 12; 3 Wharton, Crim.Proc. §§ 1678, 1679

not frequently used in criminal cases in the federal courts, probably because of their technical difficulty and the consequent likelihood of error,[17] special verdicts have figured in the early opinions.[18] They also were recognized in the state courts and may be encountered even today.[19] As in England, the jury is never constrained to deliver a special verdict, but may always declare itself on the general issue.[20]

■ Thus, departures from the unqualified general verdict are certainly not breaks with tradition. What is sacrosanct, it would seem, is the right of a defendant to have the jury deliberate and apply the law free from judicial trammel.[21] Hence, no one has ever questioned the propriety of placing upon the jury the obligation to qualify a verdict of guilty by choosing between a life and death sentence, as is done under 18 U.S.C. §§ 1111(b) (murder); 1201 (kidnaping); and 1992 (train wrecking resulting in death).[22]

■ In the instant case too the defendants do not seem to be subject to prejudice by the course I am taking, as is borne out by the fact that defense counsel have indicated their concurrence in the procedure referred to. It has been made clear that the answers to the special questions are not bases for the jury's deliberations, nor can they be tests of the propriety of the verdict. Hence, it is hard to understand how the general verdict might be vitiated, even under the view of the cases cited in note 8, supra.[23]

I should state in conclusion that I am faced with a situation in which it is my duty to consider sentences under the provisions of a new statute. However, I cannot constitutionally make the factual determination that is a condition precedent to its application. The ap-

(10th ed. 1918); Scott, Trial by Jury and the Reform of Civil Procedure, 31 Harv.L.Rev. 669, 684–685 (1918); Best, Crime and the Criminal Law in the United States 87 (1930).

17. See Commonwealth v. Anthes, 1857, 5 Gray 185, 207, 229, 71 Mass. 185, 207, 229 ("And as a special verdict implies a knowledge of the forms of law and practice, and requires great nicety to be correctly framed, it is very seldom in practice that a jury *ex mero motu* resort to this expedient." "They [the jurors] might bring in a special verdict upon the facts, submitting the law to the court; but as this would be difficult in practice for unlettered men, conversant with affairs, but not familiar with the forms of law, by far the most easy, simple and direct course, and an acknowledged legal course, was to return a general verdict."); Driver, A More Extended Use of the Special Verdict, 1949, 9 F.R.D. 495, 499.
   Some of these difficulties appear in United States v. Watkins, C.C.D.C.1829, 28 Fed.Cas. page 419, No. 16,649 where, because the jury had omitted a finding on an ultimate fact in its special verdict, the court had to order a new trial.

18. See United States v. Jackalow (John) 1862, 1 Black 484, 66 U.S. 484, 17 L.Ed. 225; United States v. Buzzo, 1873, 18 Wall. 125, 21 L.Ed. 812; United States v. Watkins, supra, note 17; cf. Samlin v. United States, 9 Cir., 1922, 278 F. 170, 172; United States v. Noble, 3 Cir., 1946, 155 F.2d 310, 317 note 4.

19. See, e. g., Commonwealth v. Anthes, 1857, 5 Gray 185, 186–187, 199–207, 229, 71 Mass. 185, 186–187, 199–207, 229; Duffy v. People, 1863, 26 N.Y. 588, 592–593; State v. Birkner, Mo.1950, 229 S.W. 2d 674; State v. Harper, 1952, 235 N.C. 62, 69 S.E.2d 161.

20. See Sparf v. United States, supra note 6, 156 U.S. at page 115, 15 S.Ct. at page 298; Commonwealth v. Anthes, supra note 19; cf. State v. Harper, supra note 19 (both prosecution and defense called for a special verdict.)

21. See notes 8 and 11, supra. But cf. Sparf v. United States, supra, note 6; Commonwealth v. Anthes, supra, note 19.

22. See, e. g., Andres v. United States, 1948, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055; United States v. Puff, 2 Cir., 211 F.2d 171, 48 A.L.R.2d 540, certiorari denied 1954, 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106.

23. See Commonwealth v. Bartholomew, 1950, 326 Mass. 218, 93 N.E.2d 551; Rice v. State, 1945, 80 Okl.Cr. 277, 158 P.2d 912; State v. Tugas, 1950, 37 Wash. 2d 236, 222 P.2d 817.

propriate arm of the court for this purpose is the jury, and history and common sense authorize it to perform this function.[24] Under the circumstances, I feel justified in submitting the special questions.

---

24. Cf. Twining v. State of New Jersey, 1908, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97.