147 F.3d 1178
 98 Cal. Daily Op. Serv. 5342, 98 Daily Journal
D.A.R. 7493
UNITED STATES of America, Plaintiff-Appellee,
v.
Norman REED, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant/Cross-Appellee,
v.
Norman REED, Defendant-Appellee/Cross-Appellant.
 Nos. 97-10053, 97-10072.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1998.
Decided July 7, 1998.
 
 Lorraine J. Mansfield, Las Vegas, Nevada, and Norman J. Reed, pro se, for defendant-appellant.
 Daniel R. Schiess, Assistant United States Attorney, Las Vegas, Nevada, for plaintiff-appellee.
 Appeals from the United States District Court for the District of Nevada; Lloyd D. George, District Judge, Presiding. D.C. No. CR-94-00239-LDG.
 Before: FLETCHER, D.W. NELSON and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Norman Reed appeals his conviction and sentence for conspiracy, mail fraud and perjury. See 18 U.S.C. §§ 371, 1341 and 1623. Reed was convicted after a 24 day trial and sentenced to 57 months imprisonment. The government cross-appeals the district court's application of the sentencing guidelines. This court has jurisdiction to hear the direct appeal pursuant to 28 U.S.C. § 1291 and the cross-appeal pursuant to 18 U.S.C. §§ 3742(a) & (b).
 
 
 2
 We resolve all but one of the claims in this appeal and cross-appeal in a memorandum disposition filed contemporaneously with this opinion. In that memorandum, we affirm Reed's conviction and remand for resentencing with instructions to the district court to consider "intended loss" pursuant to U.S.S.G. § 2F1.1. Resolution of Reed's argument that the district court erred in using a special verdict for his perjury conviction, however, merits publication. We hold that the district court did not err in submitting a special verdict form to the jury.
 
 
 3
 * Reed, a Las Vegas attorney, was involved in an insurance fraud scheme. The conspiracy was launched from a medical clinic in Las Vegas, Nevada. Associates at the clinic and their recruits participated in staged automobile "accidents." "Victims" of the accidents reported soft tissue injury and property damage. The "injuries" were "treated" by doctors at the clinic. Nathaniel Reed, the defendant's father, was recruited to file insurance claims on behalf of the participants in the accidents. When he was recruited, Nathaniel Reed was not informed of the fraudulent nature of the claims. Approximately six months after the inception of the conspiracy, Nathaniel Reed became suspicious and confronted the organizers of the conspiracy. Despite learning of the conspiracy, Nathaniel Reed continued to file fraudulent claims. Nathaniel Reed introduced his son to the leaders of the conspiracy shortly after Reed passed the bar examination. Reed then joined the conspiracy.
 
 
 4
 Reed was called to testify before a grand jury regarding the conspiracy. He testified that he was unaware that the claims were fraudulent and that he never assisted claimants to give a false statement to an insurance company. Reed was indicted and brought to trial. The trial was conducted in two phases before the same jury: the first phase adjudicated the conspiracy and mail fraud counts, and the second phase adjudicated the count of perjury before the grand jury. The jury returned verdicts of guilty in both phases.
 
 
 5
 In the second phase the district court, over the defendant's objection, supplied the jury with a verdict form which contained both general and special verdicts. The jury was instructed to complete the special verdict form only if it found defendant guilty in the general verdict. The special verdict form listed eleven sworn statements that Reed had made before the grand jury. The statements were denials of the offenses of which Reed was convicted in phase one of the trial. The jury was asked whether Reed made any of the listed statements. The jury answered each question in the affirmative. Reed appeals the use of the special verdict form.
 
 II
 
 6
 We have not previously provided a standard of review for use of a special verdict form over a defendant's objection. In United States v. O'Looney, 544 F.2d 385, 392 (9th Cir.1976), we reviewed for plain error the use of a special verdict where there was no defense objection. See also United States v. Garcia, 37 F.3d 1359, 1369-70 (9th Cir.1994) (same). In O'Looney, we stated that the propriety of using a special verdict should be determined according to "the particular circumstances of [each] case." O'Looney, at 392. Verdict forms are, in essence, instructions to the jury. We review the formulation of jury instructions for abuse of discretion. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992) (citing United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989)). "So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions ... is a matter of discretion." United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir.1985). Likewise, we review the district judge's decision to use a special verdict form for abuse of discretion.
 
 III
 
 7
 Although there is no per se prohibition, "[a]s a rule, special verdicts in criminal trials are not favored." O'Looney, 544 F.2d at 392. This rule is fashioned to protect the rights of criminal defendants by preventing the court from pressuring the jury to convict. Id. In O'Looney, we summarized the concerns with special verdicts:
 
 
 8
 To ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court. Moreover, any abridgment or modification of this institution would partly restrict its historic function, that of tempering rules of law by common sense brought to bear upon the facts of a specific case.
 
 
 9
 Id. (quoting United States v. Ogull, 149 F.Supp. 272, 276 (S.D.N.Y.1957)). We concluded that none of the special verdict concerns were implicated in that case because the jury was presumed to have followed the jury instructions and defendant could not show prejudice. Id.
 
 
 10
 Exceptions to the general rule disfavoring special verdicts in criminal cases have been expanded and approved in an increasing number of circumstances. In O'Looney, supra, we affirmed the use of a special verdict form to respond to the jury's questions. The Federal Rules of Criminal Procedure require special verdicts in criminal forfeiture cases. Fed.R.Crim.P. 31(e). Juries are regularly called upon to make factual determinations relevant to sentencing. See, e.g., United States v. Nattier, 127 F.3d 655, 661 (8th Cir.1997) (special verdict form used to determine drug involved in a conspiracy), cert. denied, --- U.S. ----, 118 S.Ct. 1398, 140 L.Ed.2d 656 (1998); United States v. Williams-Davis, 90 F.3d 490, 511 (D.C.Cir.1996) (special verdict form used to determine predicate acts for continuing criminal enterprise enhancement under the sentencing guidelines), cert. denied, --- U.S. ----, 117 S.Ct. 986, 136 L.Ed.2d 867 (1997); United States v. Garcia, 37 F.3d 1359, 1370 (9th Cir.1994) (special verdict required to determine the object of the conspiracy where defendant is indicted for a multi-object conspiracy); United States v. Owens, 904 F.2d 411, 415 (8th Cir.1990) (special verdict form preferable where two drugs are mentioned in the indictment and the sentencing guidelines provide for disparate treatment of the drugs); United States v. McNeese, 901 F.2d 585, 605 (7th Cir.1990) (special verdict form used to determine quantity of narcotics in possession case). But see United States v. Conley, 92 F.3d 157, 168 (3rd Cir.1996) (special verdict not required to determine the object of a conspiracy), cert. denied --- U.S. ----, 117 S.Ct. 1244, 137 L.Ed.2d 327 (1997); United States v. Fuentes, 877 F.2d 895, 899 (11th Cir.1989) (special verdict form not required to determine quantity of marijuana where quantity is not an element of the substantive offense). Juries submit special verdict forms regarding the types of weapons used in crimes of violence or drug trafficking. See, e.g., United States v. Perez, 129 F.3d 1340, 1342 (9th Cir.1997); United States v. Sims, 975 F.2d 1225, 1235-36 (6th Cir.1992). Juries are asked to fill out special verdict forms to determine predicate acts in RICO convictions. See, e.g., United States v. Sims, 144 F.3d 1082 (7th Cir.1998). Juries are even called upon to issue findings as to each element of an offense. See e.g., Bilzerian v. United States, 127 F.3d 237, 239 (2d Cir.1997), petition for cert. filed, 66 U.S.L.W. 3774, 3803 (May 26, 1998) (No. 97-1892). In Bisno v. United States, 299 F.2d 711, 722 (9th Cir.1961), however, we held that it was not a due process violation to deny a defendant's request to "require the jury to render a special verdict as to each of the ten items of property which [defendant] was charged with concealing." These cases make it clear that use of a special verdict form is a matter of the district court's discretion to be determined on the facts of each case.[1]
 
 
 11
 Defendant advances United States v. Spock, 416 F.2d 165 (1st Cir.1969), in support of his challenge to the special verdict form. In Spock, the First Circuit set aside a verdict in a criminal case where the district court sua sponte "put to the jury, in addition to the general issue of guilty or not guilty, ten special questions to be answered 'Yes' or 'No.' " Id. at 180. The questions, which were "vigorously protested by defendants," inquired as to whether a defendant was guilty of a single cause of action using different formulations of the crime. Id. For example, in regard to an "aiding and abetting" count, the first three questions submitted asked whether the defendants had (1) aided, (2) counseled or (3) abetted. Id. The First Circuit held that that special verdict form was unduly coercive: "[t]here is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step." Id. at 182. Spock is distinguishable from the case at hand. The special verdict form here listed the cause of action once and queried whether specific incidents of conduct occurred. Each incident was sufficient in itself to support a conviction pursuant to the indictment. The form did not reformulate the elements of the crime and therefore lacked the coercive quality of the form in Spock.
 
 
 12
 Where a special verdict form requires the jury to determine the occurrence of any of a series of acts, each of which is sufficient to constitute the indicted crime, the traditional concerns regarding special verdicts are not implicated. Use of a special verdict in the present matter is no more coercive than listing the predicate acts in a RICO charge or the objects in a conspiracy case. It cannot be said that the special verdict form "infringed on [the jury's] power to deliberate"; required the jury to issue a "report of its deliberations"; hindered the jury's "power to follow or not to follow the instructions of the court"; or restricted the jury's historic function "of tempering rules of law by common sense." See O'Looney, 544 F.2d at 392. We hold that the district court did not abuse its discretion in submitting a special verdict on Reed's perjury charge.
 
 
 13
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Sixth Circuit upheld convictions based on a special verdict similar to the one used here. In United States v. Rivera, 77 F.3d 1348 (11th Cir.1996), cert. denied, 517 U.S. 1249, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996), "the district court utilized a special verdict form dividing the indictment into two 'charges,' " each charging the defendant as a felon in possession of a firearm, but on two separate occasions. Id. at 1350. The jury unanimously found that the defendant had possessed a firearm on one occasion, but could not reach a verdict as to the other occasion. Id. The defendant did not appeal the decision to use a special verdict form; rather, he asserted that it violated his double jeopardy rights to be reprosecuted for the second offense. Id. at 1351-52. Rivera thus does not persuade us that the special verdict form used here was proper, but it does assure us that the verdict form was not an innovation. See Spock, 416 F.2d at 183 ("[N]ew procedures ... should be adopted with great hesitation....")