**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Jacob MIMS, a/k/a Jacob Harold
Mims, Defendant-Appellant.**

**No. 933, Docket 72-2406.**

United States Court of Appeals,
Second Circuit.

Argued May 30, 1973.

Decided June 15, 1973.

Carl H. Dobozin, Buffalo, N. Y. (Dobozin & Pottle, Buffalo, N. Y., on the brief) for appellant.

Roger P. Williams, Asst. U. S. Atty. (John T. Elfvin, U. S. Atty. W. D. N. Y., Philip B. Abramowitz, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

PER CURIAM:

Harold Jacob Mims appeals from a judgment of conviction entered in the

---

United States District Court for the Western District of New York, John T. Curtin, J., following a jury trial on a four-count indictment alleging, in substance, conspiracy and armed bank robbery. 18 U.S.C. §§ 371, 2 & 2113(a), (b), (d).[1]

Appellant's principal complaint on appeal is that Judge Curtin erred in permitting the manager of the bank, Thomas K. Schlicht, to identify appellant in court as one of the two holdup men.[2] Both wore stocking masks during the robbery, but one—allegedly Mims—had his mask rolled up over his forehead for a time, so that Schlicht was able to see his face for between ten seconds and one minute. Although Mims and his alleged accomplice were arrested on the day of the robbery, April 20, 1972, Schlicht did not see Mims until May 4 in court prior to the scheduled start of the preliminary hearing.[3] At that hearing, which was delayed until the next day, Schlicht identified Mims and further testified that he had recognized him the previous day, when Mims had apparently been sitting in the first row of the spectators' section.[4] According to Schlicht, at the time that he first recognized Mims on May 4, he did not see him wearing handcuffs or realize that he was under guard, although later in the day he did observe that Mims was in handcuffs.

Appellant asserts that the confrontation on May 4 was improperly suggestive and that the Government failed to establish at the subsequent *Wade* hearing before Judge Curtin that the identification at trial would be the product of Schlicht's observation of Mims at the bank. In regard to the latter point, Schlicht had a clear view of the unmasked robber's face, he was able to observe him for as long as one minute, and as a victim of the crime, he may have been especially likely to remember the man's features. These considerations, together with the witness's affirmation at the *Wade* hearing that his identification of Mims was based upon the events of April 20, lead us to conclude that this case is not "the rare exception," Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1252 (1968) (en banc) (Leventhal, J., concurring), cert. denied, 394 U.S. 964, 89 S. Ct. 1318, 22 L.Ed.2d 567 (1969), in which the judgment of the trial judge on such matters of identification should be rejected. See, e. g., United States ex rel. Bisordi v. LaVallee, 461 F.2d 1020, 1024 (2d Cir. 1972); United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).[5]

---

1. Mims was convicted on three counts, the conspiracy charge having been dismissed at the conclusion of the Government's case. He received concurrent eight-year sentences on each count.

2. Mims's co-defendant, Herman Lee Howard, who had initially implicated Mims at the time of his own arrest, was severed prior to trial and testified against Mims. Howard subsequently pleaded guilty to one count of the indictment, imposition of sentence was suspended and he was placed on probation for four years.

3. Schlicht was shown three albums of photographs by the F.B.I. one hour after the robbery, but he did not find any photographs of the man he had seen without a mask at the bank.

4. Apart from Mims, there were at the time, according to Schlicht, two other black men in the courtroom.

5. Other considerations supporting the conclusion that there was no taint are Schlicht's mention to the F.B.I. of a distinctive red glove worn by the robber (a pair of such gloves was found in Mims's apartment when he was arrested); his apparent care in going through the photograph albums without making any positive identifications, see United States ex rel. Smiley v. LaVallee, 473 F.2d 682, 683 (2d Cir. 1973) (per curiam); and the corroborative testimony of accomplice Howard and his cousin. See United States ex rel. Phipps v. Follette, supra, 428 F.2d at 916. Of course, there were some errors in Schlicht's initial descriptions to government agents, but these were not necessarily fatal to a finding of no taint. See, e. g., United States ex rel. Bisordi v. LaVallee, supra, 461 F.2d at 1024–1025.

In view of this holding, we need not decide whether the confrontation at the preliminary hearing was unnecessarily suggestive. But cf. United States v. Roth, 430 F.2d 1137, 1140–1141 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971).

We have considered appellant's other arguments, but none warrants a finding of reversible error.

Affirmed.