UNITED STATES of America, Appellee,

v.

Joseph STASSI, a/k/a Joe Rogers, et al.,
Defendants-Appellants.

Nos. 113–115, Dockets 76–1110,
76–1175, 76–1180.

United States Court of Appeals,
Second Circuit.

Argued Sept. 1, 1976.

Decided Oct. 26, 1976.

Arnold E. Wallach, New York City, for defendant-appellant Joseph Stassi.

Julia P. Heit, New York City (Diller, Schmuckler & Asness, New York City, of counsel), for defendant-appellant Anthony Stassi.

Ralph S. Naden, New York City, for defendant-appellant Sorenson.

James E. Nesland, Asst. U. S. Atty, New York City, (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Howard S. Sussman, Lawrence B. Pedowitz, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

After a six-week jury trial before Judge Whitman Knapp in the United States District Court for the Southern District of New York, appellants were convicted of conspiracy to import and distribute heroin between January 1, 1970 and December 30, 1972; of importing and selling 40 kilograms in September 1970, and of importing and distributing 70 kilograms in June 1971.

The tale of their misdeeds is like the all too familiar plot of a Class B movie rerun, *see United States v. Cirillo*, 468 F.2d 1233 (2d Cir. 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973);

*United States v. Santana,* 503 F.2d 710 (2d Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974); *United States v. Magnano,* 543 F.2d 431 (2d Cir.), and does not merit a detailed recounting. Hatched in the federal penitentiary in Atlanta, Georgia where appellants Joseph Stassi and William Sorenson were incarcerated, the conspiracy contemplated the purchase of heroin from a "French connection" and the smuggling of it into the United States. Anthony Stassi, Joseph's brother, was recruited as the outside man to arrange the purchase and distribution of the drugs, and Sorenson, upon his release from prison in March 1970, assisted him. The proof, evaluated in the light most favorable to the government, was sufficient to support the convictions. Of appellants' numerous assertions of procedural error, only a few invite discussion.

### Deportation of Otvos

■ Indictment 75 Cr. 395, under which appellants were tried and convicted, named Jean Claude Otvos, another inmate at Atlanta, as a fellow conspirator. Subsequent to the issuance of the indictment on April 17, 1975, it was discovered that Otvos had been paroled and deported on March 3, 1975. Appellants, relying upon *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), contend that, in deporting Otvos, the government violated their Sixth Amendment right to examine a potentially important witness. We find no merit in this argument.

There was, as Judge Knapp found, a substantial probability that Otvos, an indicted co-conspirator, would have claimed his Fifth Amendment privilege and refused to testify had he been present in court. *See United States v. Finkelstein,* 526 F.2d 517, 524 (2d Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). We need not, however, rest our decision on that ground.

At the hearing conducted by Judge Knapp on appellants' motion to dismiss the indictment, three special agents of the Federal Drug Enforcement Administration testified that Otvos told them in December

1974 that he would be eligible for parole in May 1975. This information was confirmed by an Intelligence Analyst of the Eastern District Strike Force, who was investigating Otvos on behalf of the Parole Board.

The Parole Board had requested this investigation in December 1974 but was not advised of Otvos' possible involvement in the instant conspiracy until January 31, 1975. In the meantime, because of a change in the law, Otvos became eligible for an earlier parole; and it was decided that he would be paroled and deported on March 3. Judge Knapp found that the Parole Board was grossly negligent in proceeding with the parole and deportation of Otvos after receiving notice of the possibility of his indictment but refused to charge the United States Attorney's office or the Drug Enforcement agents with the same lack of care. Insofar as this finding was one of fact, it had ample support in the evidence. Appellants' contention that the Parole Board's negligence must be imputed to the prosecution was properly rejected by the District Judge. *United States v. Quinn,* 445 F.2d 940, 944 (2d Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *cf. United States v. Morell,* 524 F.2d 550, 555 (2d Cir. 1975).

Appellant Anthony Stassi also relies upon the absence of Otvos to support his contention that he was deprived of his constitutional right to a speedy trial. Stassi was originally indicted on April 30, 1973 under Indictment 73 Cr. 405, which charged him alone with the receipt of 40 kilograms of heroin on September 28, 1970. This indictment was sealed in order that the government could pursue the investigation which led to the uncovering of the massive conspiracy established on the trial below.

■ We fail to see how the government's delay in bringing Stassi to trial on the 1973 indictment charging him with a single substantive narcotics violation would require dismissal of the 1975 indictment charging him with long-term participation in an extended conspiracy. This is not similar to the situation which existed in *United States v. Alo,* 439 F.2d 751, 754–55 (2d Cir.), *cert.*

*denied,* 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971) where the second indictment merely supplanted a substantially identical sealed indictment returned several years before. Moreover, because there is no indication that Otvos would have been a potential witness had Stassi been prosecuted under the earlier indictment, appellant has failed to demonstrate the prejudice required for dismissal. *United States v. Alo, supra,* 439 F.2d at 755.

■ The government was entitled to carry on its criminal investigation despite the return of the 1973 indictment. *United States v. Poeta,* 455 F.2d 117, 122 (2d Cir.), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972). Appellant's further argument that he was thereby subjected to the "humiliation and degradation" of government surveillance furnishes too shaky a foundation upon which to build a claim of prejudice. *Cf. Hoffa v. United States,* 385 U.S. 293, 309–10, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

### Evidence Outside the Scope of the Indictment

■ Although the indictment charged a conspiracy running from 1970 to 1972, the District Judge permitted evidence of narcotics related transactions occurring in 1973. Numerous decisions of this Court have held such testimony to be admissible where it is probative of the existence of the conspiracy charged or the participation of the alleged conspirator. *See, e. g., United States v. Nathan,* 476 F.2d 456, 460 (2d Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973); *United States v. Miranda,* 526 F.2d 1319, 1331 (2d Cir. 1975), *cert. denied* —— U.S. ——, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). Judge Knapp emphasized time and again that he was admitting the disputed testimony for the limited purpose of establishing the association of the parties. *See United States v. Diggs,* 497 F.2d 391, 394 (2d Cir. 1974), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1975). He also instructed the jury that the defendants were being tried only for the conspiracy charged in the indictment and that, if the jurors had a reasonable doubt as to the defendants' guilt, they were to acquit, even though they were "dead certain" that defendants had committed some other crime. There was no error here.

■ Proof was also introduced of numerous unrelated criminal acts by accomplices called as government witnesses, much of it on direct examination by the prosecution. Because the defense was armed with information required by 18 U.S.C. § 3500 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) with which to discredit these witnesses, the government was entitled to take the initiative in this regard so that it would not be accused of withholding information from the jury. *United States v. Rothman,* 463 F.2d 488, 490 (2d Cir.), *cert. denied,* 409 U.S. 956, 93 S.Ct. 291, 34 L.Ed.2d 231 (1972). Defendants' failure to object indicates that the prosecution's questioning was neither unexpected nor improper.

### Special Findings by the Jury

■ Prior to May 1, 1971, the conspiracy with which appellants were charged constituted a violation of 21 U.S.C. §§ 173 and 174. As of May 1, 1971, the provisions of these sections were replaced by §§ 812, 841, 846, 952 and 963. Because the old sections and the new provided for different terms of punishment, the District Judge, for sentencing purposes, was required to know which sections had been violated. *See Bradley v. United States,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973). With this in mind, he asked the jury to indicate in writing whether, in the event they found defendants guilty of the conspiracies charged, they became members of the conspiracy before or after May 1, 1971. Appellants argued that this was a request for a special verdict, generally held to be improper in a criminal case. *United States v. Adcock,* 447 F.2d 1337, 1339 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971). However, where the specific information sought is relevant to the sentence to be imposed, it is not error to request it of the jury. 2 Wright, Federal

Practice and Procedure: Criminal § 512 (1969); *Jalbert v. United States*, 375 F.2d 125, 126 (5th Cir.), *cert. denied*, 389 U.S. 899, 88 S.Ct. 225, 19 L.Ed.2d 221 (1967); *United States v. Ogull*, 149 F.Supp. 272 (S.D.N.Y.1957). In any event, appellants failed to object to the practice adopted by the District Court and may not now be heard to complain. *Cf. United States v. Jones*, 425 F.2d 1048, 1057 (9th Cir.), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

### Brady Material

On February 28, 1974, in a completely unrelated investigation, Special Agents James Bradley and Carlo Boccia, both of whom were witnesses below, attempted to stop the automobile of a person whom they mistakenly believed to be a narcotics dealer. An altercation ensued, during which Bradley shot and wounded the driver. The incident was investigated by both a federal and a state grand jury, and no charges were filed against any of the individuals involved. Moreover, a charge of assault by Bradley against the driver was eventually dismissed. Appellant Sorenson contends that a new trial should be granted under *Brady v. Maryland, supra*, because the government did not disclose this information to the defense.

 While the concept of the *Brady* rule is clear, a review of our decisions in cases such as *United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968); *United States v. Kahn*, 472 F.2d 272 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); *United States v. Rosner*, 516 F.2d 269 (2d Cir. 1975), *cert. denied*, —— U.S. ——, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976); and *United States v. Morell, supra*, 524 F.2d at 550 shows that the explication of the rule is sometimes as difficult as its application. Where the undisclosed evidence relates to the credibility of a government witness (*see Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), these difficulties are magnified by the broad scope of defendants' inquiry. In exploring the credibility of a government witness, defense counsel may within reasonable limits inquire as to his "interest, his motives, his prejudices or hostilities, his means for obtaining knowledge of the fact, his power of memory, his way of life, his associations" and other similar matters. *United States v. Lawinski*, 195 F.2d 1, 7 (7th Cir. 1952); *see United States v. Dillon*, 436 F.2d 1093, 1095 (5th Cir. 1971); *Arpan v. United States*, 260 F.2d 649, 658 (8th Cir. 1958). Because evidence as to any or all of these matters might arguably be pertinent, something more than pertinency had to be shown to mandate the granting of a new trial. There must have been a "significant chance" that the evidence would have affected the judgment of the jury. *United States v. Fried*, 486 F.2d 201, 203 (2d Cir. 1973), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 759 (1974). The District Judge felt that the undisclosed evidence above described did not meet this requirement, and we agree.

Moreover, subsequent to Judge Knapp's decision below, the Supreme Court fashioned a more exacting standard for the granting of a new trial in cases such as this. The thrust of *United States v. Agurs*, 427 U.S. 97, 112–114, 96 S.Ct. 2392, 49 L.Ed. 2d 342 (1976) is that, in the context of the entire record, the omitted evidence must raise a reasonable doubt as to the defendant's guilt. Because the undisclosed evidence here was insufficient under the test previously applied in this circuit, it certainly does not satisfy the requirements of *Agurs*.

### Other Assertions of Error

██ Appellants' remaining assertions of error require no extended discussion. Judge Knapp correctly charged the rule of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945) which permitted the jury to convict each of the conspirators of the substantive offenses charged if they were committed in furtherance of the conspiracy and were reasonably foreseeable by the defendant whose guilt was being considered. *United States v. Finkelstein, supra*, 526 F.2d at 522. Appel-

lant Sorenson cites no authorities to support his post-trial argument that he was "extremely prejudiced" because two men in civilian clothes, who Sorenson asserts were police officers, accompanied another police officer when he was called as a government witness. The District Judge's comment that "[t]wo people walked in and walked out" appropriately summarizes this incident.

■ After a full hearing, Judge Knapp found that a government witness' selection of Sorenson's photograph was "in no way the result of suggestion". Bearing in mind the independent sources of identification described by the witness, *United States v. Mims*, 481 F.2d 636, 637 (2d Cir. 1973), and the substantial corroborative evidence of Sorenson's participation in the conspiracy, *United States v. Reid*, 517 F.2d 953, 967 (2d Cir. 1975), we do not find this to be the "rare exception" in which the District Judge's determination should be overruled. *United States v. Mims, supra*, 481 F.2d at 637.

■ With excerpts carefully culled out of context, appellants urge that they were deprived of a fair trial by remarks of the court and the prosecution. Having examined each challenged incident in the setting of the whole trial, *United States v. Wexler*, 79 F.2d 526, 530 (2d Cir. 1935), *cert. denied*, 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991 (1936), we find no merit whatever in appellants' contentions. Insofar as the forceful character of the prosecutor's summation may have exceeded the norm, this was prompted by defendants' repeated assertions that the prosecution was participating in or knowingly abetting a frame-up. *United States v. Santana, supra*, 485 F.2d at 371.

In summary, we find that appellants received a fair trial and that there was ample proof of their guilt. The judgments of conviction are therefore affirmed.